U.S.D.C ATLANTA
Date: Mar 18 2021
JAMES N. HATTEN, Clerk
By: s/B. Evans
Deputy Clerk

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Daniel Theodore Miller

**CRIMINAL COMPLAINT**

Case Number: 1:21-MJ-280

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  Beginning on a date unknown but at least by January 15, 2021 and continuing until on or about March 17, 2021, in Cobb County, in the Northern District of Georgia, defendant did, conspire with others, known and unknown, to violate Title 21, United States Code, Section 841(a)(1), that is to knowingly and intentionally possess with intent to distribute a controlled substance, said conspiracy involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(1)(A), in violation of Title 21, United States Code, Section 846; and

possess a firearm on January 15, 2021 in furtherance of drug trafficking in violation of Title 18 United States Code, Section 924(c)

I further state that I am a Special Agent   and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

*Bennie Bryant Jr.*
Signature of Complainant
Bennie R. Bryant

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

| March 18, 2021 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Bennie R. Bryant, Jr., a Special Agent for the Department of Homeland Security, being duly sworn, do hereby depose and state as follows:

**A.    Introduction**

1.    I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

By this affidavit, I submit that probable cause exists to believe that Daniel MILLER, committed a narcotics offense, beginning on a date unknown but at least by January 15, 2021, and continuing until on or about March 17, 2021, in Cobb County, in the Northern District of Georgia, the Defendant did, conspire with others, known and unknown, to violate Title 21, United States Code, Section 841(a)(1), that is to knowingly and intentionally possess with intent to distribute a controlled substance, said conspiracy involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(1)(A), in violation of Title 21, United States Code, Section 846 and a firearms

1

offense by possessing a firearm in furtherance of drug trafficking on January 15, 2021, in violation of 18 U.S.C. § 924(c).

## Training and Experience

2.  I am a Special Agent (SA) employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a SA since May 2019. I am currently assigned to the Organized Crime and Drug Enforcement Task Force (OCDEFT) Strike Force in Atlanta, Georgia, where I am responsible for investigating drug organizations that operate to obtain, import, transport, and distribute illegal controlled substances, as well as money laundering and bulk cash smuggling. My duties and responsibilities include the investigation of civil and criminal violations of the United States Code.  In 2019, I received 28 weeks of extensive training investigating various violations of federal statutes at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA.  Prior to that I was employed as a Postal Inspector with the United States Postal Inspection Service (USPIS) and assigned to the prohibited mailings and narcotics (PMN) team, where I was responsible for investigating illegal controlled substances being distributed through the U.S. mail. In 2017, I received 12 weeks of extensive training investigating various violations of federal statutes at the Career Development Unit (CDU) in Potomac, MD.  Prior to that, I was employed as an Intelligence Analyst for the National Targeting

Center (NTC) National Security and Threat Analysis (NSTA) Division as well as the HSI SAC Charlotte office, where I provided intelligence support to field agents regarding counterterrorism, drug trafficking, transnational gang identification, and confidential informant files.  Prior to that, I was a Border Patrol Agent (BPA) with the United States Border Patrol (USBP). As a BPA I served as a Task Force Officer (TFO) for HSI. In that capacity, I conducted multiple criminal investigations for violations of federal and state laws including, but not limited to alien smuggling, human trafficking, drug smuggling, child pornography, benefit fraud, and organized criminal activity.  In 2008, I received 20 weeks of extensive training regarding enforcement of immigration and federal laws at the U.S. Border Patrol Academy at FLETC in Artesia, NM.

3. In connection with my official HSI duties, I assist in the investigation of criminal violations of federal drug laws and related offenses.  I have received specialized training in the enforcement of drug laws, the investigation of drug trafficking and drug organizations, financial and money laundering investigations, and the use of electronic surveillance.

4. During my law enforcement career, I have participated in numerous drug trafficking investigations involving various types of drugs, including cocaine, fentanyl, heroin, methamphetamine, crystal methamphetamine, and marijuana.  I am personally familiar with and have used all routine methods of

investigation, including, but not limited to, visual surveillance, electronic surveillance, informant and witness interviews, interrogation, and undercover operations. I have closely participated in multiple federal wiretap investigations that resulted in several arrests and seizures concerning drug trafficking and money laundering. During these investigations, I have observed drug traffickers use telephones in furtherance of their illegal activities. I have analyzed telephone toll records and other records and debriefed informants regarding the use of telephones in furtherance of illegal activity.

5. I have participated in investigations involving the interception of wire communications, the interception of electronic communications, and the use of video surveillance. I am familiar with the way narcotics traffickers and money launderers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances. I have participated in investigations involving the following (but not limited to) types of drugs: cocaine, khat, cocaine base, methamphetamine, crystal methamphetamine, heroin, MDMA, Fentanyl, and marijuana. I have been involved in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds derived from drug trafficking. I have also participated in numerous narcotics investigations, in which I have participated in physical

surveillance, controlled deliveries, knock and talks, electronic surveillance, undercover transactions, and the execution of search warrants.

6. Based upon my training and experience, conversations with more experienced agents, interviews conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs; I am familiar with the way in which drug traffickers often obtain cellular telephones in fictitious names and/or the names of third parties to conceal their drug trafficking activities from law enforcement. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, and the use of off-shore accounts. I have also seen numerous times, as well as researched cases where drug traffickers imported illegal narcotics secreted in legitimate cargo or packages parcels, which are then sent via publicly recognized government and private parcel delivery services.

7. Through my training and experience, I have learned that drug traffickers employ several techniques, either singly or in combination, to aid their business, or to avoid detection by law enforcement. These techniques include the

keeping of ledger books, telephone books, receipts, drug customer lists, photographs, and other papers that identify conspirators and their residences. These records often relate to the importation, transportation, purchasing, and distribution of illegal drugs and the proceeds derived from the sale of these substances. These individuals routinely maintain handwritten business records which track the flow of both illegal drugs and currency derived from their sales.

8. I have also observed that drug traffickers commonly secret contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences and stash houses, for easy access and to conceal such items from law enforcement authorities. Persons involved in drug trafficking have in the past concealed in their residence caches of illegal drugs, currency, jewelry, automobile titles, deeds of trust for real property, and other items of value which are the proceeds of prior illegal drug transactions. Additionally, documents often exist in these same places that contain evidence of financial transactions relating to obtaining, transferring, secreting, or engaging in the trafficking of illegal drugs and other illegal activities.

9. I also know that drug traffickers generate substantial profits as a result of illegal drug dealing, which the courts have recognized as probative evidence of crimes motivated by greed, in particular, trafficking in narcotics and dangerous drugs. These persons often maintain or handle large amounts of

United States currency to operate and finance their on-going drug distribution enterprise. These persons often purchase and/or title and/or rent homes, buildings, and vehicles, not only in their names, but in fictitious names, aliases, or in the names of relatives, associates, or business entities to avoid detection by government agencies and to avoid identification of assets.

10. I also have found that these individuals use sophisticated communications networks, e.g. telecommunications systems, cellular telephones, software applications, mobile applications, laptop and desktop computers, emails and instant messenger programs, financial spreadsheet computer programs, computer address books, and other computer programs to facilitate their various illicit schemes. I have also found that these individuals keep records of the use of these networks and programs, such as bills or receipts. I have found that these receipts indicate communication with co-conspirators involved in trafficking narcotics.

11. I also know that drug traffickers commonly have in their possession, on their person, and/or at their residences and places of business, various types of firearms. These types of firearms include, but are not limited to, handguns, machine guns, rifles, shotguns, and other weapons or destructive devices. Such firearms and devices are used to protect and secure the drug traffickers' property and currency.

## C.  Sources of Information

12. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have reviewed. Such statements are stated in substance unless otherwise indicated. Wherever in this affidavit, I state a belief, such belief is based upon my training and experience and the information obtained through this investigation by myself and other agents.

13. Because this affidavit was prepared for the limited purpose of supporting a complaint against the individual listed herein, I have not included each and every fact known about this investigation. I have set forth only those facts that I believe are necessary to establish the required basis for a criminal complaint. I do not rely upon facts not set forth herein in reaching my conclusion that a criminal complaint should be issued, nor do I request that this Court rely

upon any facts not set forth herein in reviewing this Affidavit in support of the application for a criminal complaint.

### D.  Factual Summary – Probable Cause Basis

14.  Daniel MILLER has an extensive criminal history dating back to 2003.  MILLER has convictions in Hall, Gwinnett, Cobb, Fulton, and Gilmer counties.  MILLER has multiple felony convictions for possession, manufacturing, distributing and trafficking methamphetamine. MILLER also has multiple probation and parole violations.  MILLER has also been convicted of multiple misdemeanor crimes such as fleeing or attempting to elude a police officer, driving under the influence (multiple convictions), theft by receiving stolen property, and driving while under the influence of drugs.

**Miller is arrested with five kilograms of methamphetamine and a firearm**

15.  On January 15, 2021, Cobb County Police were alerted to potential drug activity involving a Chevrolet Camaro with license plate CPD9426.  Officers observed the Camaro commit a traffic violation by swerving across two lanes of traffic into a turn lane and crossing a solid white line. Based on this traffic violation, officers initiated a traffic stop.

9

16.    MILLER was driving the Camaro and Lindsay BRANDON was in the passenger seat. Officers asked MILLER to exit the car and speak with them.

17.    During the traffic stop, officers deployed a narcotics K-9, which alerted on the vehicle. Officers asked MILLER to empty his pockets, which were filled with United States currency. A search of the vehicle found five kilograms of methamphetamine in a bag in the back seat. Officers also found United States currency in the car. In total, officers found $20,047 between the car and the money from MILLER's person. Under MILLER's seat, officers found a Kimber .45 caliber pistol. BRANDON had methamphetamine, Xanax, and a .22 caliber pistol in her purse. She is also a convicted felon. Both MILLER and BRANDON were arrested on state charges.

**Miller confesses to possessing methamphetamine**

18.    On January 28, 2021, Task Force Officers with HSI interviewed MILLER. At the start of the interview, MILLER was read his Miranda rights and agreed to speak with agents. MILLER stated that the methamphetamine he was arrested with was provided by a "CARLOS", a high-level drug trafficker that MILLER knew. During the interview, MILLER admitted that he had purchased the five kilograms of methamphetamine found in his car shortly before his arrest.

19.    MILLER received a bond on his Cobb County charges and was placed on an ankle monitor as a condition of his bond.

**Miller continues to distribute methamphetamine**

21. On March 16, 2021, Source of Information 1[1] (SOI-1) was traffic stopped by the Kingsport, TN police department. During the traffic stop, a pound of methamphetamine was recovered. SOI-1 was read their Miranda rights and they agreed to speak. SOI-1 admitted that they were transporting methamphetamine and the identified MILLER as their source of supply. SOI-1 stated that they purchased a kilogram of methamphetamine from MILLER and had already sold part of the methamphetamine. SOI-1 stated that the purchase occurred at MILLER's apartment on March 15, 2021, and that they had also purchased a second kilogram of methamphetamine from MILLER the previous week. SOI-1 told agents that both purchases occurred in MILLER's residence in the Atlanta area due to his bond condition of being on house arrest.[2] SOI-1 stated they communicated with MILLER using Signal, an encrypted messaging application on their cellular phone.

---

[1] SOI-1 was interviewed following their arrest. At the time of their arrest, SOI-1 was on bond on methamphetamine charges from a prior arrest. SOI-1 was not promised anything in return for their statement. SOI-1 provided facts that agents were able to corroborate, and agents believe that the information provided by SOI-1 is reliable.

[2] Agents contacted the probation monitoring company who are supervising MILLER. According to them, MILLER is on a house arrest status with an ankle monitor and is not allowed to leave his apartment complex without permission.

**E. Conclusion**

31.    Based upon the above, I believe that there is probable cause to believe that Daniel MILLER committed a narcotics offense, beginning on a date unknown but at least by January 15, 2021, and continuing until on or about March 17, 2021, in Cobb County, in the Northern District of Georgia, the Defendant did, conspire with others, known and unknown, to violate Title 21, United States Code, Section 841(a)(1), that is to knowingly and intentionally possess with intent to distribute a controlled substance, said conspiracy involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(1)(A), in violation of Title 21, United States Code, Section 846 and a firearms offense by possessing a firearm in furtherance of drug trafficking on January 15, 2021, in violation of 18 U.S.C. § 924(c).

**FURTHER YOUR AFFIANT SAYETH NOT**