IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:21-CR-142-TWT-CMS |
| DANIEL T. MILLER, III | |

**GOVERNMENT'S PRE-HEARING REPONSE TO THE DEFENDANT'S
PRELIMINARY OMNIBUS MOTION TO SUPPRESS**

Comes now the United States of America, by and through its counsel, Ryan K. Buchanan, United States Attorney, and Calvin A. Leipold, III and Rachel S. Lyons, Assistant United States Attorneys for the Northern District of Georgia, and provides this Court with a pre-hearing response to the Defendant's Preliminary Omnibus Motion to Suppress. (Doc. 48).

## Introduction

On August 19, 2022, the Defendant filed a Preliminary Omnibus Motion to Suppress. (Doc. 48). On August 23, 2022, the Court held a pretrial conference. (Doc. 49). The Court ordered an evidentiary hearing on parts of the Defendant's Motion and ordered the Government to respond in writing to the Defendant's arguments regarding the cell phone search warrant and federal search warrant used to search the Defendant's residence. The Government provides the following response to those issues as well as the Defendant's constitutional arguments regarding the validity of a Georgia traffic law and asks that the Court

1

deny the Defendant's motions for the reasons stated below.[1]

## Facts

### I.    Background

On January 15, 2021, Homeland Security Task Force Officers Jared Israel and David Schweizer received a tip about drug activity in Cobb County.  They were told that a blue Mazda with a Maryland plate was involved in drug activity at a Bruster's Ice Cream off of Busbee Parkway in Kennesaw, Georgia.  The two TFOs went to the Bruster's Ice Cream to conduct surveillance.  They located the Mazda and observed the driver of the Mazda meet with other vehicles for a short period of time.  On the first meeting, TFO Israel observed the driver exit his car with a bag, get into another car, and leave without the bag.  The TFOs surveilled the Mazda as it returned to a hotel for a short time and then returned to the area of the Bruster's Ice Cream.

 The TFOs then observed the Mazda meet with a Chevrolet Camaro. The two vehicles then drove together across the street to a PGA Store and parked next to one another.  TFO Schweizer observed a woman in the Mazda as it drove across the street.  When TFO Israel drove past the Camaro at the PGA Store, he observed that the women had exited the Mazda and was now in the Camaro. Believing that the driver of the Mazda supplied drugs to the people in the Camaro, the TFOs coordinated for a traffic stop of both vehicles.

---

[1] The Government requests that the Court allow it to supplement the factual record regarding the traffic stop following the motions hearing.  However, the Government believes that the legal framework surrounding the stop will not be impacted by the hearing.

Officers conducted a traffic stop on the Mazda and identified the driver as Eriberto Patino ("Patino"), who was staying at the Suburban Lodge, room 135. After waiving his *Miranda* rights, Patino admitted to selling five kilograms of methamphetamine to a white male in a Camaro (presumably the Defendant). Patino said the transaction was coordinated by cellular phone.

Sgt. Abernathy of the Cobb Police located the Camaro and was parked behind the Camaro at a red light in his police vehicle. The Defendant was driving and Lindsey Brandon was a passenger. When the light turned green, the Defendant suddenly made a right-hand turn across other lanes of traffic. Sgt. Abernathy initiated a traffic stop and approached the passenger-side window. Sgt. Abernathy spoke to the Defendant through the open passenger window and asked him if he had made an illegal turn across several lanes of traffic. The Defendant did not deny making the illegal turn, but attempted to explain why he had done so.

During the stop, a police canine was deployed and alerted. During a search of the vehicle, officers found over five kilograms of methamphetamine and a firearm under the Defendant's seat. Additionally, officers located $20,047 and a firearm in Ms. Brandon's purse. The Defendant's cellular phone was also seized by law enforcement. Both the Defendant and Ms. Brandon are convicted felons. The Defendant and Ms. Brandon were arrested on state charges.

On January 25, 2021, TFO Israel sought and obtained a state search warrant from Cobb County Magistrate Judge Charles Chesbro to search the Defendant's phone. (Exh 1). On January 28, 2021, TFO Israel interviewed the Defendant. The

Defendant subsequently obtained a bond on his state charges and, as a condition of that bond, he was ordered to wear an ankle monitor and could not leave his residence.

After obtaining the warrant for the Defendant's phone, TFO Israel had the phone downloaded and reviewed its contents. He observed a video of a sexual assault of an unconscious female (V-1). TFO Israel was able to identify V-1 and interview her. She told TFO Israel that the Defendant had provided her with GHB, or a similar substance, and sexually assaulted her.

On March 16, 2021, the Kingsport, Tennessee police officers conducted a traffic stop that resulted in the arrest of the driver and the seizure of a half kilogram of methamphetamine.  The driver of the car, (V-2), was read her *Miranda* rights and spoke with a DEA TFO. V-2 said she had obtained the methamphetamine from the Defendant's apartment, specifically because the Defendant had an ankle monitor and could not leave. Further, V-2 had also purchased another kilogram of methamphetamine from the Defendant earlier that week.  The driver also told the DEA TFO that the Defendant had dosed her with GHB and raped her.  The DEA provided this information to HSI.

On March 18, 2022, SA Bryant obtained a federal complaint to arrest the Defendant and a search warrant for the Defendant's apartment. (Exh. 2). Agents located and arrested the Defendant. They also seized methamphetamine and a liquid that tested positive for the presence of 1,4-butanediol which, when consumed by humans, has an effect similar to GHB.  Pursuant to the warrant,

agents also seized multiple electronic devices. Those devices were searched pursuant to a federal warrant.

The Defendant was indicted on April 13, 2021. (Doc. 1). Three days later, SA Bryant obtained a search warrant to search the forensic image of the cellular phone seizure during the traffic stop of the Defendant. (Exh. 3). This warrant authorized agents to review the forensic image for violations of 21 U.S.C. §§ 841(a)(1), 841(b)(7), 846, and 18 U.S.C. §§ 922(g), 924(c), 1956, and 1957.

## Argument and Citations to Authority

### I.   Sgt. Abernathy's Stop of the Defendant Was Constitutional

The Defendant contends that Sgt. Abernathy's traffic stop on January 15, 2021, was unconstitutional because the relevant statute, O.C.G.A. § 40-6-48, is unconstitutionally vague in violation of the Defendant's Fifth and Fourteenth Amendment rights, the Georgia Constitution, and O.C.G.A. § 16-1-2. (*See* Doc. 48 at 4–7). O.C.G.A. § 40-6-48 mandates in relevant part that:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, . . . (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

GA. CODE ANN. § 40-6-48 (2022).

A statute is void for vagueness under the Fifth Amendment's Due Process Clause where it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–

5

58 (1983)).  The void-for-vagueness doctrine guarantees individuals fair notice of statutorily proscribed conduct and "guards against arbitrary or discriminatory law enforcement."  *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018).  Under the void-for-vagueness doctrine, the key inquiry is not "whether a particular fact might be difficult to prove," but, "whether 'it is unclear *what* fact must be proved.'"  *United States v. Wilson*, 979 F.3d 889, 907 (11th Cir. 2020) (quoting *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012)) (emphasis added).

### a.  O.C.G.A. § 40-6-48 is Not Void-for-Vagueness

In making his argument, the Defendant relies primarily on the Supreme Court's reasoning in *Johnson v. United States*, where the Court held the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague.  (*See* Doc. 48 at 5–6); *Johnson v. United States*, 576 U.S. 591, 606 (2015).  In *Johnson*, the Court noted the two primary deficiencies of the ACCA were that the statute had an ordinary-case requirement, instructing judges to contemplate the "kind of conduct the ordinary case of a crime involves," and that the statute contained an "ill-defined risk threshold."  *Id.* at 591 (internal citations and quotation marks omitted).  However, the Court in *Johnson* noted that the second deficiency, the unclear risk threshold, would not have subjected the ACCA to the void-to-vagueness doctrine in and of itself.  *Id.* at 603–04 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree."  (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913))).

Here, the Georgia statue in question is not plagued with the same deficiencies that the Court pointed out in *Johnson*.  O.C.G.A. § 40-6-48 gives clear instruction that a vehicle should be driven "as nearly as practicable entirely within a single lane." GA. CODE ANN. § 40-6-48 (2022).  Such instruction does not require the court to partake in the kind of "ordinary case" inquiry the Court denounces in *Johnson*, but rather makes clear the requisite conduct: to stay within a single lane until "such movement can be made with safety."  *Id.*  Moreover, although the Defendant takes issue with the Georgia statue's use of phrases like "as nearly as practicable" and "movement can be made with safety," (Doc. 48 at 6), the Supreme Court has observed that "there are limitations in the English language with respect to being both specific and manageably brief" and what is required of statutes is not that they "satisfy those intent on finding fault at any cost," but that "they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with" them.  *United States Civ. Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 578–79 (1973).

The Defendant also argues that O.C.G.A. § 40-6-48 is void-for-vagueness because it "beg[s] for" arbitrary enforcement.  (Doc. 48 at 6)  However, the Defendant's argument fails to allege with any particularity the ways in which the Georgia statute is subject to subjective application, but rather, launches into an explanation of the impact of *Johnson* on facial and as applied statutory challenges. (*See generally* Doc. 48 at 6–7)  However, simply because O.C.G.A. § 40-6-48 requires officers to exercise some level of discretion, this does not render the statute unconstitutionally vague.  *See United States v. Steed*, 548 F.3d 961, 974 (11th

7

Cir. 2008) (noting that a state administrative inspection statute was not vague simply because it allowed officers to exercise discretion in determining which vehicles to inspect).

Further, regarding the enforcement of O.C.G.A. § 40-6-48 specifically, courts in this circuit have upheld application of the statute on several occasions, regardless of an officer's subjective motivation making the traffic stop. *See e.g.*, *United States v. Robinson*, 272 Fed. App'x 774, 778 (11th Cir. 2008) (upholding a traffic stop based on a defendant's violation of O.C.G.A. § 40-6-48 despite the defendant's claim that the stop was merely pretextual); *Robinson v. McNeese*, No. 5:20-CV-00160-TES, 2020 WL 6566174, at *10 (M.D. Ga. Nov. 9, 2020) (same); *United States v. Wrenn*, No. 7:18-CR-58-HL, 2021 WL 6118669, at *5 (M.D. Ga. Dec. 27, 2021) (upholding a traffic stop based on the defendant's violation of O.C.G.A. § 40-6-48).  In addition, at least one other circuit has held that a similar lane-change statute was not subject to the void-for-vagueness doctrine because it "clearly identifi[ed] the prohibited conduct, that is, failing to maintain a single travel lane."  *See United States v. Garcia*, 205 F.3d 1182, 1184 n.1 (9th Cir. 2000).

Therefore, the Defendant's arguments that O.C.G.A. § 40-6-48 is unconstitutionally vague fail, and as such, Sgt. Abernathy's reliance on O.C.G.A. § 40-6-48 in conducting a traffic stop of the Defendant was constitutional.

### b. Even If the Court Finds O.C.G.A. § 40-6-48 Was Void-for-Vagueness, the Traffic Stop Was Still Reasonable

In addition to the validity of the statute in question, Sgt. Abernathy's stop of the Defendant was not unreasonable regardless of whether O.C.G.A. § 40-6-48

was unconstitutionally vague because Sgt. Abernathy's good faith reliance on the statute was objectively reasonable. *See United States v. Constanza*, No. 5:17-CR-49-MTT, 2018 WL 3015244, at *3 n.6 (M.D. Ga. June 15, 2018). In *Constanza*, the Eleventh Circuit addressed a defendant's claim that O.C.G.A. § 40-6-48 was unconstitutionally vague, finding that "[t]his argument fail[ed] because the officers' good-faith reliance on the statue's validity was objectively reasonable." *Id.* The Eleventh Circuit went on to note that "nothing in the statute leads the Court to conclude that it is 'clearly unconstitutional,'" and given that the standard inquiry was what a "reasonably well-trained officer" would have done, it was natural for the officers in question to "rely on the validity of the Georgia driving-on-roadway statute when initiating a traffic stop." *Id.*

Here, like the officer in *Costanza*, Sgt. Abernathy's reliance on O.C.G.A. § 40-6-48 in pulling the Defendant over was objectively reasonable, rendering the stop itself reasonable. *Id.*; *see also United States v. Rivas*, 746 Fed. App'x 826, 828 (11th Cir. 2018) (finding it unnecessary to determine whether a defendant actually violated an Alabama traffic law because the officer's interpretation of the defendant's conduct as being in violation of the law was objectively reasonable); *United States v. Benitez*, 541 Fed. App'x 961, 963 (11th Cir. 2013) (upholding a traffic stop where the defendant claimed the violation was mere pretext because the officer had "objectively reasonable bases to execute the stop").

Sgt. Abernathy observed the Defendant commit a traffic violation and subsequently initiated a traffic stop pursuant to a what he reasonably believed to

be a valid Georgia traffic law.  Therefore, the traffic stop itself was constitutional regardless of whether O.C.G.A. § 40-6-48 is found unconstitutionally vague.

### c.  Even If There Was No Traffic Violation, Officers Still Had Probable Cause to Stop the Defendant Based on Collective Knowledge

Even if this Court finds O.C.G.A. § 40-6-48 unconstitutionally vague and Sgt. Abernathy's reliance on the statute objectively unreasonable, the stop is still constitutional because law enforcement had probable cause to stop the Defendant based on collective knowledge.  Probable cause can exist "where the facts and circumstances within the collective knowledge of the law enforcement officials are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed."  *United States v. Pierre*, 825 F.3d 1183, 1192 (11th Cir. 2016).

Here, law enforcement officers had collective knowledge to create "reasonable caution" that a drug trafficking offense had been or was being committed at the time Sgt. Abernathy stopped the Defendant.  On January 15, 2021, before Sgt. Abernathy stopped the Defendant, HSI TFOs witnessed a woman exit a Mazda suspected to be trafficking drugs and enter the Defendant's car.  Prior to when Sgt. Abernathy stopped the Defendant, HSI TFOs communicated these observations about suspected drug trafficking to Sgt. Abernathy, providing probable cause that the Defendant was engaging in drug trafficking at the time of the stop.

"In deciding whether a search or seizure was justified, this Court may look to the collective knowledge of the law enforcement officials involved in an investigation 'if they maintained at least a minimal level of communication during their investigation.'"  *United States v. Andres*, 960 F.3d 1310, 1317 (11th Cir. 2020) (quoting *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985)).  Here, since the HSI TFOs were in communication with Sgt. Abernathy prior to the stop, law enforcement's collective knowledge regarding suspected drug trafficking violations supplied probable cause for the stop regardless of Sgt. Abernathy's reliance on O.C.G.A. § 40-6-48.  *See United States v. Rojas Duque*, No. 1:20-CR-203-MHC-JKL, 2022 WL 3138005, at *4 (N.D. Ga. June 3, 2022) (finding collective knowledge supplied probable cause for a stop where the officer who conducted the stop was in a group text message with other law enforcement personnel monitoring the defendant's suspected drug trafficking activity).

Therefore, regardless of whether O.C.G.A. § 40-6-48 is found unconstitutionally vague or Sgt. Abernathy's reliance on the traffic violation is found objectively unreasonable, Sgt. Abernathy's stop of the Defendant was still constitutional because law enforcement's collective knowledge of the Defendant's suspected drug trafficking provided probable cause for the stop.

## II.    The Search Warrant for the Defendant's Cellphone is Valid

In his motion, the Defendant argues that the warrant that TFO Israel obtained for the Defendant's phone is deficient for four reasons.  He argues that the warrant lacks probable cause, is overbroad, fails to describe a nexus of illegal

activity to the records sought to be searched, and there was an impermissible delay in seeking the warrant. (Doc. 48 at 3).

### a. The Warrant Contains Probable Cause

Probable cause exists "'when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.'" *United States v. Brundidge,* 170 F.3d 1350, 1352 (11th Cir. 1999). The search warrant affidavit must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (citation omitted). This requires "a connection between the defendant and the [thing] to be searched and a link between the [thing to be searched] and any criminal activity." *Id.* When reviewing an affidavit to determine if it contains probable cause, the entire affidavit must be read together "as a whole." *See United States v. Reed*, 700 F.2d 638, 641 (11th Cir. 1983). When reviewing a search warrant, courts do not "conduct a de novo determination of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). The reviewing court's role is "only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Id.* This is "a practical, commonsense decision," and courts are not to "interpret supporting affidavits in a hypertechnical manner." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). Courts want "to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id.*; *see also United States v. Robinson*, 62 F.3d 1325, 1331 (11th

Cir. 1995) (requiring the reviewing court to afford "great deference" to a judicial determination of probable cause).

Here, the warrant at issue contains probable cause. TFO Israel observed the meetings between the Defendant and Patino, coordinated for the traffic stops of both their vehicles, and recovered methamphetamine from both vehicles. In the warrant, TFO Israel informed the issuing Magistrate about the background of his investigation and what led him to the Bruster's Ice Cream. (Exh. 1 at 4). The warrant states that based on TFO Israel's training and experience, which is laid out in the warrant and includes over thirteen years of law enforcement experience, that TFO Israel believed the driver of the Mazda was conducting hand-to-hand drug transactions.

The affidavit also includes that the driver of the Camaro, the Defendant, was traffic stopped following TFO Israel's observation of a drug transaction. Further, the affidavit states that Patino told officers that he sold five kilograms of methamphetamine to the Defendant and that "this process required his cell phone to designate vehicle descriptions and confirm locations." (Exh. 1 at 4). These facts presented the Cobb County Magistrate "substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Based on the totality of the evidence presented in the affidavit, there was more than sufficient basis for the magistrate judge to determine that there was a fair probability that a search of the Defendant's phone would produce evidence of illegal activity.

13

### b.  The Warrant is not Overbroad

The Fourth Amendment's particularity requirement provides that a warrant must "particularly describe[e] the place to be searched, and the persons or things to be seized."  *See, generally, Groh v. Ramirez*, 540 U.S. 551 (2004) (emphasis removed).  The Eleventh Circuit has held that the particularity requirement with respect to items to be seized should "be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit."  *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir. 1982) (citations omitted).

"By explicitly limiting the scope of what may be searched and seized to evidence of the crimes under investigation . . . , the warrant was sufficiently particular to enable the searcher to reasonably ascertain and identify the property authorized to be seized."  *United States v. Sullivan*, No. 1:15-CR-290-MHC-DMS, 2016 U.S. Dist. LEXIS 90449, at *21 (N.D. Ga. May 25, 2016) (citing *Signature Pharmacy, Inc. v. Wright*, 438 F. App'x 741, 745-56 (11th Cir. 2011) (per curiam) (unpublished) (holding that the items to be seized were described with sufficient particularity where the items were limited by the specific crimes under investigation and stating "[b]ecause the descriptions in the warrants refer to items that are evidence of a violation of certain statutes relating to the sale of controlled substances, the items were described with sufficient particularity to allow . . . a seasoned law enforcement officer, to identify the things to be seized"); *United States v. Harvey*, No. 1:15-CR-00053-TWT-RGV, 2015 U.S. Dist. LEXIS

14

174276, at *48 (N.D. Ga. Nov. 30, 2015), adopted by 2016 U.S. Dist. LEXIS 2093, 2016 WL 109984, at *1 (N.D. Ga. Jan. 8, 2016) (concluding that a search warrant for a cell phone was sufficiently particularized where the property to be seized was limited to evidence of the crimes being investigated and rejecting a challenge based on a lack of time limitation in the warrant).  Here, the universe of information that could be seized pursuant to the warrant was limited to evidence of illegal activities concerning drug trafficking.  The warrant, therefore, did not permit a general exploratory search.  *See Sullivan*, 2016 U.S. Dist. LEXIS 90449, at *22) (citing *United States v. Brooks*, No. 3:13-CR-58-J-34JRK, 2014 U.S. Dist. LEXIS 9651, 2014 WL 292194, at *11 (M.D. Fla. Jan. 27, 2014) (concluding that because the scope of the warrant was restricted to evidence of child pornography-related crimes, it did not permit a free-ranging search)).

Here, TFO Israel sought to search the Defendant's phone for evidence of "drug trafficking or any additional information related to organized crime." (Exh. 1 at 1.).  Also, the warrant listed that there was probable cause to believe that a violation of O.C.G.A. § 16-13-31, Trafficking Methamphetamine, had occurred.  The warrant sought to fully extract the contents of the phone and review the contents for evidence of the aforementioned crimes.  The affidavit notes that all of the contents of the phone need to be reviewed to determine which information is evidence of a crime.  *Id.*  While this request is broad, the warrant limits the material that can be seized.  *Id.* at 6.  Much of the information located in a cellular phone might not initially seem incriminating on its face, such as GSP data.  However, location information can help investigators identify

locations used in the offense such as stash houses or where phone users were located prior to drug deals. *Id.* at 1. The warrant limits the seizure of information from the phone that constitutes evidence of violations of O.C.G.A. § 15-13-31's prohibition on trafficking methamphetamine, and is therefore not overbroad. *Id.* at 6–7.

The Defendant attempts to use *Carpenter v. United States*, 138 S. Ct. 2206 (2018) to argue that the warrant was a general warrant. However, *Carpenter* is easily distinguishable for two reasons. First, *Carpenter* held that a warrant is required to obtain cell-site location information (CSLI). *Id.* at 2223. The Defendant attempts to analogize *Carpenter* to the search of GPS data seized from the phone pursuant to a warrant. (*See* Doc. 48 at 11–12). This attempt fails because the Supreme Court's holding in *Carpenter* stands for the proposition that law enforcement must obtain a warrant prior to accessing CSLI data, *not*, as the Defendant appears to suggest, that law enforcement *cannot* access such data pursuant to a search warrant. *See id.* Here, TFO Israel, in compliance with *Riley v. California*, sought and obtained a warrant for the phone. *See* 573 U.S. 373, 403 (2014). Second, *Carpenter* addresses the bulk acquisition of information from cell towers. 138 S. Ct. at 2223. Here, the warrant limits the use of GPS information to that information related to methamphetamine trafficking.

### c. The Warrant has a nexus of illegal activity to the records sought

Contrary to the Defendant's claims, the warrant here has a direct nexus to the evidence sought. The Defendant alleges that the facts in the affidavit do not show the magistrate that there is "substantial basis that criminal activity was

accomplished using a cell phone." (Doc. 48 at 13). However, the affidavit clearly states that that the TFOs observed the meeting involving Patino and the Defendant's car and that this meeting was one of a series of meetings involving Patino and a number of vehicles arriving at the Bruster's Ice Cream for hand-to-hand drug transactions. (Exh. 1 at 4). Further, the affidavit states that Patino admitted to selling five kilograms of methamphetamine to the Defendant and that Patino stated that, "this process required his cell phone to designate vehicle descriptions and confirm locations." *Id*. Thus, the affidavit demonstrates that Patino was organizing drug deals using his cellphone. The sale of five kilograms of methamphetamine to the Defendant was organized using Patino's cell phone, and there is probable cause that evidence related to this transaction is on the Defendant's phone.

### d. There was not an Impermissible Delay in Seeking the Warrant

Relying on *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009), the Defendant argues that the ten days between the arrest of the Defendant and the signing on the warrant amounts to an impermissible delay and that, as a result, suppression is warranted. (Doc. 48 at 13–14). However, a review of the facts of *Mitchell* shows that it is easily distinguishable from the Defendant's case and that the ten day period between the arrest of the Defendant and the obtaining of a warrant did not amount to an impermissible delay. As the *Mitchell* court noted, a court evaluates the reasonableness of the delay "in light of all the facts and circumstances, and on a case-by-case-basis." *Mitchell*, 565 F.3d. at 1351 (internal quotation marks omitted).

17

In *Mitchell*, the Eleventh Circuit reversed a Magistrate Judge's decision denying a motion to suppress the search of a hard drive from Mitchell's computer that contained child pornography. *Id.* at 1353. Agents seized the hard drive during a "knock and talk" at the home of Mitchell, who admitted that there was likely child pornography on the hard drive. *Id.* at 1349. The time period between the seizure of the hard drive and the obtaining of the warrant was three weeks. *Id.* at 1349. During that time, Mitchell was not in custody. *Id.*

First, the Defendant nor his counsel has ever requested that the seized phone be returned, and no such request occurred between the Defendant's arrest and the obtaining of the search warrant. This significantly weakens the Defendant's claim that his Fourth Amendment rights were impacted by the delay. *See United States v. Brantley*, No. 1:17-CR-77-WSD, 2017 U.S. Dist. LEXIS 198432, at *6 (N.D. Ga. 2017) (citing *United States v. Stabile*, 633 F.3d 219, 235–36 (3d Cir. 2011) (noting that the defendant "did not ask for the return of his hard drives until … *eighteen months* after the initial seizure") (citing *United States v. Johns,* 469 U.S. 478, 487 (1985) ("defendants who 'never sought return of the property' cannot argue that delay adversely affected Fourth Amendment rights") (emphasis in original); *United State v. Brown*, No. 3:10-CR-00016-1, 2013 U.S. Dist. LEXIS 180987, at *10 (W.D. Va. Dec. 30, 2013) (noting that *Stabile* "found important . . . the defendant's failure to request the return of the property") (citing *Johns,* 469 U.S. at 487; *Stabile*, 633 F.3d at 236; *United States v. Burgard,* 675 F.3d 1029, 1033 (7th Cir. 2012) ("[I]t can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it.")).

18

Also, the time period between the lawful seizure of the Defendant's phone and the warrant application was 10 days, less than half of the delay in *Mitchell*. *See* 565 F.3d at 1349.  Further, the phone was seized from the vehicle of the Defendant along with multiple firearms, five kilograms of methamphetamine, and over $20,000 in cash which demonstrates clear probable cause that the Defendant was engaged in methamphetamine trafficking.  During the ten day delay, the Defendant was in custody and could not have accessed the phones. *See United States v. Shaw*, 531 Fed. Appx. 946, 950 (11th Cir. 2012) (reversing the suppression of a search of cell phones and holding that a three-month delay in searching cell phones was not unreasonable when the defendant was in custody and could not have accessed the phones).  Further, there is a distinct difference between the hard drive for a desktop computer seized in *Mitchell*, and the seizure of a cellular phone.  While the Defendant argues that his cellphone is a "minicomputer," he fails to explain to the Court how his possessory interest was interfered with because the Defendant was in custody between his arrest and TFO Israel obtaining the warrant.  (Doc. 48 at 13-14)  All of these factors weigh in favor of finding a ten day delay reasonable.  *See United States v. Laist*, 702 F.3d 608, 613–14 (11th Cir. 2012) (listing factors to consider in determining the reasonableness of a delay in obtaining a warrant for a computer).

**e. Even if the warrant lacked probable cause or was not properly tailored, the Defendant's motion should be denied because the good faith exception applies**

The Supreme Court has held that the exclusionary rule is not to be applied to evidence obtained by officers who reasonably relied in good faith upon a magistrate's determination of probable cause and issuance of a warrant that was later found to be invalid. *United States v. Leon*, 468 U.S. 897, 922 (1984). The exclusionary rule is designed to deter police misconduct, and when an officer acting in good faith obtains a warrant from a judge, "there is literally nothing more the policeman can do in seeking to comply with the law." *Id.* at 921 (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976) (Burger, C.J., concurring)) (internal quotation marks omitted).

The good faith exception does not apply in four limited sets of circumstances where: (1) the magistrate was misled by information in an affidavit that the affiant knew or should have known was false; (2) the magistrate wholly abandoned her judicial role; (3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 914–15; *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003). The "threshold for establishing this [fourth] exception is a high one, and it should be[,]" because in the ordinary case, a police officer cannot be

20

expected to question a magistrate's decision to issue a warrant. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (citing *Leon*, 468 U.S. at 921).

The Eleventh Circuit has described the inquiry here as whether the affidavit was so "bare-boned" and conclusory that no officer could have reasonably relied on the warrant obtained based on the affidavit. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998). During this inquiry, the court looks only at the face of the affidavit. *Robinson*, 336 F.3d at 1296 ( "[I]n order to determine whether an affidavit lacked sufficient indicia of probable cause, we must look only at the face of the affidavit.").

Here, considering the face of the respective affidavit for the challenged search warrant, none of the exceptions to the good faith rule apply. There is no evidence that the magistrate was misled by a false material fact in the affidavit. The magistrate did not wholly abandon his judicial role. The affidavit supporting the warrant contained valid probable cause, or at the very least, sufficient indicia of probable cause to render official belief in its existence reasonable. And the warrant adequately particularized the place to be searched and the things to be seized. In other words, the warrant is not so facially deficient that the executing officers could not reasonably presume it to be valid. *See United States v. Leon*, 468 U.S. at 921. Accordingly, the *Leon* good faith rule protects the officers' reasonable reliance upon the magistrates' respective determinations of probable cause in this case and

the exclusionary rule must not to be applied to suppress the evidence obtained by the officers pursuant to the issued warrants.[2]

### III.   The Federal Warrant for the Defendant's House was Based on Probable Cause and not Overbroad

Following the arrest of V-2 on March 15, 2021, SA Bryant was informed of the information provided by V-2 to Tennessee investigators regarding: V-2's purchase of methamphetamine from the Defendant, the sexual assault of V-2 by the Defendant, and that the Defendant was on bond for methamphetamine charges out of Cobb County at the time of the aforementioned conduct.  Based on this information, SA Bryant sought and obtained a federal search warrant for the Defendant's residence.  (Exh. 2).  The resulting warrant was obtained on March 18, 2021, and was issued by the Honorable United States Magistrate Judge Justin Anand.  The same probable cause and particularity standards previously discussed regarding the search warrant for the Defendant's phone apply to this warrant.  *See* Section II.a–b *supra.*

### a.  Information Provided by V-2 was Corroborated and Supports Probable Cause

In his affidavit, SA Bryant provided the court with his background, training, and experience.  (Exh. 2 at 2–9).  SA Bryant informed the magistrate of the extensive criminal history of the Defendant involving methamphetamine, as well

---

[2] Further, any issues concerning the state warrant are mitigated by the federal warrant SA Bryant obtained for the image of the phone. (Exh. 3).

as the Defendant's recent arrest involving five kilograms of methamphetamine and a firearm.  (Exh. 2 at 10-11).  The affidavit included information regarding the identification of a victim of a drug-facilitated sexual assault from the search of the Defendant's cell phone following his arrest.  (Exh. 2 at 12).  The affidavit then includes information regarding the arrest of V-2 (SOI-1), the statements made by V-2, and the corroboration of those statements by agents.  The Defendant argues that this information was not corroborated, and therefore V-2 was not reliable. (Doc 48 at 14-15). However, the affidavit demonstrates that SA Bryant corroborated the information from V-2 in a number of ways.

First, V-2 told investigators that the Defendant was on an ankle monitor and that they had purchased methamphetamine at the Defendant's residence because the Defendant could not leave his residence.  This information was corroborated when SA Bryant verified that the Defendant was in fact on an ankle monitor and had not left his residence.  (Exh. 2 at 13).  Next, the reliability of V-2 was demonstrated by the distance of V-2 from the Defendant.  Kingsport, Tennessee—where V-2 was arrested—is over 275 miles from Atlanta, Georgia. V-2 identified that the Defendant lived in an apartment, was on an ankle monitor, and that the Defendant was a kilogram methamphetamine supplier. Therefore, the knowledge of V-2 concerning the Defendant, his apartment, his drug dealing, and his bond conditions, despite the significant distance involved, shows that the information provided by V-2 was reliable.  SA Bryant corroborated all of this information, which supports the reliability of V-2.

Moreover, the purchase of the seized methamphetamine occurred only three days before the warrant was issued.

Finally, V-2 told investigators about their sexual assault at the hands of the Defendant.  V-2 told investigators that they were raped by the Defendant and that they were drugged with GHB prior to being raped.  (Exh. 2 at 13).  This evidence was consistent with information provided by V-1 who was identified after TFO Israel viewed a video of her being sexually assaulted by the Defendant while under the influence of GHB.

Because SA Bryant was able to corroborate multiple pieces of information provided by V-2 regarding the purchase of methamphetamine from the Defendant at his residence, the information provided by V-2 supported a finding of probable cause by the magistrate.

b. **The Warrant was not Overbroad**.

As part of the warrant application, SA Bryant included Attachments A and B to the warrant.  Attachment A describes the property to be searched, and Attachment B describes the items to be seized.  (Exh. 2, Attachments A and B). Those items are limited to "[a]ny and all evidence and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1), and 846 occurring after January 1, 2021 in any form . . . ." (Exh. 2 at 26).  Attachment B then includes a number of categories of items that could contain evidence that agents are authorized to seize.  The Defendant argues that because some of the categories of items permitted to be seized are "[f]inancial records, such as bank records, deposit slips, vehicle and property titles and mortgages/leases,

24

including indicia of occupancy or ownership;" and "cellular phones, tablets, computers, electronic storage devices, Subscriber Identity Module ("SIM") cards, money counters, and chargers associated with the seized device(s)" that the warrant is therefore overbroad.  (Doc. 48 at 15–16).  However, those items are specifically tailored to facts contained in the affidavit and probable cause exists to seize them.

First, SA Bryant addresses the importance of financial information in his training and experience section of the affidavit.  (Exh. 2 at 7–8).  Here, SA Bryant was seeking evidence of a drug trafficking conspiracy in violation of 21 U.S.C. § 846, which by definition involves multiple people and often involves large amounts of money.  Further, there was evidence that the Defendant was engaged in long-term narcotics trafficking due to his arrest with five kilograms of methamphetamine, bulk currency, and firearms as well as the arrest of V-2 with a half kilogram of methamphetamine provided by the Defendant after his release on bond.

Next, the warrant authorized the seizure of electronic items and money counters.  These are items for which SA Bryant knows to be generally used in drug trafficking.  (Exh. 2 at 10).  Further, there was evidence that the Defendant used cellular phones to conduct his drug trafficking as V-2 informed investigators in Tennessee that the Defendant communicated with her using Signal, an encrypted mobile application.  (Exh. 2 at 13).  Additionally, TFO Israel had previously located evidence of drug distribution on the Defendant's first phone that was seized, evidencing that the Defendant distributed GHB prior to

the sexual assault of V-1.  Finally, the warrant specifically did not permit the *search* of those items, only their seizure.  (Exh. 2 at Attachment B).  Accordingly, the search warrant was not overbroad.

      c.  **Even if the warrant lacked probable cause or was not properly tailored, the Defendant's motion should be denied because the good faith exception applies**

Here, the same arguments regarding good faith for the cellular phone warrant apply to the warrant for the Defendant's residence. *See* Section II.e, *supra*. However, the residential warrant is more particularized than the phone warrant, which only strengthens the good faith of the agents in executing the warrant.

[continued on next page]

## **Conclusion**

For the foregoing reasons, the United States requests that the motion be denied.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

*Calvin A. Leipold*

CALVIN A. LEIPOLD, III
*Assistant United States Attorney*
Georgia Bar No. 442379
Calvin.leipold@usdoj.gov

*Rachel Lyons*

RACHEL S. LYONS
*Special Assistant United States Attorney*
Georgia Bar No. 721677
Rachel.lyons@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Bruce Harvey, Counsel for Daniel Miller

October 24, 2022

/s/ CALVIN A. LEIPOLD, III

CALVIN A. LEIPOLD, III
*Assistant United States Attorney*

28