UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. |
| | ) | |
| v. | ) | 1:21-CR – 142-TWT-CMS |
| | ) | |
| DANIEL T. MILLER, | ) | |
|     Defendant. | ) | |

### DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE (DOC. 51), REGARDING DEFENDANT'S PRELIMINARY OMNIBUS MOTION TO SUPPRESS (DOC. 48)

COMES NOW the Defendant, Daniel Miller (hereafter "Miller"), through undersigned counsel, and pursuant to Fed. R. Crim. P 12(b)(3)(C), 28 U.S.C. §636(b)(1), and Fed. R. Crim. P. 59(a), and incorporating and re-alleging by reference Defendant's *Preliminary Omnibus Motion To Suppress*, (Doc. 48), and in reply to the Government's "*Government's Pre-Hearing Response To The Defendant's Preliminary Omnibus Motion To Suppress,*"(Doc. 51), further provides the following:

### I. Procedural History of Miller's Motion to Suppress

1. On August 19, 2022, Defendant Miller filed his first Motion to Suppress (Doc. 48).

2. In his motion, Miller challenged 1) the Georgia statute O.C.G.A. §40-6-48 Failure To Maintain Lane as unconstitutionally vague; 2) law enforcement's

1

conduct of exceeding the scope of Miller's traffic stop on January 15, 2021 beyond a reasonable duration; 3) the warrantless search of Miller's vehicle; 4) the admissibility of statements made by Miller while he was in custody; 5) the warrants to search Miller's iPhone 12 cell phone and seizure of data from it, and; 6) the search warrant for Miller's residence. (Doc. 48)

3. On October 24, 2022, the Government filed its response. (Doc. 51)

## II. Reply on the Constitutional Issues Implicated By The Traffic Stop

### A. O.C.G.A. §40-6-48 Failure To Maintain Lane is Unconstitutional

The code section in question that Miller is accused of violating, justifying the traffic stop by Sgt. Abernathy of the Cobb Police, is O.C.G.A. §40-6-48 "Driving on roadways laned for traffic" and reads in part as follows:

> "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this Code Section, shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety;"

A legislative statute that doesn't set out clear standards for police and public alike to follow, to the degree that it deprives the public of liberty in an arbitrary manner, is impermissibly vague. *City of Chi. v. Morales*, 527 U.S. 41, 52 (1999), citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). The statute as written implies that if the driver believes she can execute a lane change safely, then she will not be in

2

violation of the statute. At the same time, regardless of the subjective belief of the driver in the safety of her maneuver, if an officer observing the same behavior believes for any reason that the driver's maneuver was not done safely, then she can initiate a traffic stop for further investigation. In this regard, the standards for public and the police are muddy, in which case, the police effectively have all the discretion. Vagueness can invalidate a criminal statute if it doesn't "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or if authorizes or encourages "arbitrary and discriminatory enforcement." *City of Chi*, 527 U.S. at 56.

The Government alleges that Sgt. Abernathy was parked behind Miller's vehicle at a red light at the time Miller's lane-change violation allegedly occurred. (Doc. 51 at 3). But according to Abernathy's dash cam video provided in discovery he was at least 75 yards behind Miller as he made a right turn from the turn lane. The stop was made at night as there were many cars pulling up to the intersection. By the time Sgt. Abernathy slowed before the light, Miller was clearly already in the turn lane safely executing his turn. The Government also alleges that Miller acknowledged the illegality of his lane change, but body cam video in discovery from Sgt. Abernathy's traffic stop doesn't show this, but instead, that Miller denied and quibbled with Abernathy's allegations. Miller's response to Abernathy was in essence that his lane change was made safely. Nonetheless, Abernathy, relying on

3

his perception of events, pressed on with his inquiries well beyond the investigation of Miller's violation of the statute. A statute that leaves too much discretion to the police falls short of the requirements of the Due Process Clause of the Fourteenth Amendment. <u>City of Chi</u>, supra at 63. This case illustrates the ease with which law enforcement's discretion overrides the public's understanding of the statute. The statue as written violates the rights of the public to "fair warning of the nature of the conduct forbidden" under Georgia statute and the Due Process Clause and is unconstitutional. O.C.G.A. §16-1-2(2). Finally, The Government's argument that the stop was based on Collective Knowledge can be taken as their acknowledgement that Sgt. Abernathy intended to stop and search Miller's vehicle and that he saw an opportunity to use a vague statute as legal cover.

### B. The Traffic Stop Was Otherwise Illegal

According to the Government, law enforcement had probable cause to stop Miller based on their collective knowledge. (Doc. 51 at 10). Task Force Officers (TFOs) from Homeland Security Investigations (HIS) who physically monitored a vehicle suspected to be engaged in drug trafficking relayed their suspicions of Miller to Sgt. Abernathy prior to the stop. (<u>Id</u>.) However, reports by HSI in discovery show that TFO agents began monitoring a blue Mazda SUV bearing a Maryland tag parked near an ice cream shop based on an anonymous tip. This factual situation is similar to the scenario described in <u>Whiteley v. Warden, Wyo</u>

4

*State Penitentiary*, where a sheriff's deputy initiated a traffic stop that resulted in a warrantless search based on an arrest warrant whose basis was nothing more than an informer's tip. *Whiteley v. Warden, Wyo State Penitentiary*, 401 U.S. 560, 565 (1971). The Court in *Whiteley* found the arrest of the defendant to be illegal, saying that the arresting officers are entitled to believe the officers requesting aid have probable cause to arrest, but where "the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Whiteley*, 401 U.S. at 568.

TFO agents lacked probable cause to stop Miller prior to Sgt. Abernathy's traffic stop. Agents observed the blue Mazda park next to Miller briefly before Miller drove to a clothing store in the vicinity. Miller then left the store and was followed by a TFO, who maintained contact with Sgt. Abernathy. The blue Mazda wasn't stopped or searched prior to Miller's traffic stop. Miller was not seen by TFO Agents to be carrying any items of alleged contraband. At the time of Miller's stop, TFO agents and Sgt. Abernathy had only a suspicion of criminal activity by Miller based on an anonymous tip that wasn't fully corroborated.

The facts in this instance are similar to those in *Bailey v. United States*, even though it involved the search of a premises, where probable cause was based on information from a confidential informant and where a defendant departed the scene of an execution of a search warrant and was detained a searched over a mile

5

away. <u>Bailey v. United States</u>, 568 U.S. 186, 190 (2013). The search in this case was of Miller, who was clearly not the subject of the tip, but was someone who entered and them left the vicinity of a surveillance operation. In such a situation, other standards control the lawfulness of the stop including reasonable suspicion under <u>Terry</u>, where factors like whether contraband was recovered from the original scene inform the analysis. <u>Bailey,</u> 568 U.S. at 202. Hence, the collective knowledge held by Sgt. Abernathy may have provided reasonable suspicion of Miller but not probable cause.

### III.    The Search Of Miller's Cell Phone And Seizure Of Data Was Illegal

**A. The Warrant Was Overbroad**

Law enforcement seized Miller's cell phone from his person when he was taken into custody on January 15, 2021. On January 25, 2021, law enforcement obtained a search warrant to seize and search the data contained on the phone, as described in "Exh 1."(Doc. 51, p. 3). The warrant authorized seizure of all stored data, including any files that have been hidden, erased, compressed, coded, or encrypted -- essentially every speck of data and more data beyond the phone— as the warrant purportedly authorized agents unfettered to access to any all data (whether on an application, or in the hard drive) that existed and which could be determined through the phone. The warrant did not contain any date or time

limitation, search parameters for the content to be searched, or analysis procedures for law enforcement to follow during the search of the data and extraneous web accounts. The warrant said the search was to be executed within 10 days. No warrant return was turned over in the discovery. It is not clear from the discovery or any additional evidence from the Government that the search was actually executed within that timeframe.

**B. There's No Evidence The Warrant Was Timely Executed**

The warrant required law enforcement to seize and copy the data, or execute the warrant within fourteen days. Clearly, under *Riley v. California*, 573 U.S. 373 (2014), it should be understood that law enforcement agents were required to obtain a search warrant to search the contents of Defendant's phone, including the data contained therein. *Riley* established that Fourth Amendment does in fact apply to the search of cell phones and their data, and that law enforcement are required to obtain a warrant supported by probable cause to seize and search the contents of a cell phone. *Riley*, 573 U.S. at 403. Thus, the Fourth Amendment does govern, and an authorized warrant must be in place prior to the Government extracting data, and the data must be "seized" or "copied" during the warrant period.

The Government's warrant for a digital copy of the data seized during search obtained on April 16, 2021 and attached to the Government's response as "Ex.3"

wasn't disclosed to the defense until October 24, 2022. (Doc. 51, p. 5). It is the subject of a separate motion to suppress and will be addressed separately. (Doc. 53).

**C. The Good Faith Exception Does Not Apply**

The good faith exception does not apply in this case. It was not reasonable to search "all" of the data and any connected data, and for it to be left up to the discretion of the searching agents to decide what could be looked at, opened, accessed, and what could be seized. In the case at hand, "the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized." United States v. Zimmerman, 277 F.3d 426, 437 (3d Cir.2002) (citation omitted).

In United States v. Wecht, 619 F. Supp. 2d 213, 235 (W.D. Pa. 2009), the court found that the directive to seize "all information and data" contained on a computer's hard drive and associated storage devices "was so facially overbroad as to violate the Fourth Amendment's particularity requirement and render any reliance on the warrant objectively unreasonable." Id. Therefore, because the warrant's description of items to be seized in the case at hand "was so patently overbroad as to fail, on its face, to particularize the items to be seized, any reliance on that warrant was objectively unreasonable and the evidence obtained as a result

8

of that search must be suppressed." *United States v. Wecht*, 619 F. Supp. 2d 213, 251 (W.D. Pa. 2009).

### IV. The Search Of Miller's Residence Was Illegal

The probable cause was insufficient for the search warrant for Miller's residence at 3720 Walton Riverwood Lane Apt.1018 in Atlanta and included in the record at the Government's "Exh. 2" because the information provided by confidential informants was to vague to create probable cause that evidence of methamphetamine trafficking could be found at the target location. (Doc. at 4) The affidavit describes a "Source Of Information 1 (SOI-1) who resided in Tennessee who alleged that she purchased meth from Miller at his residence in "the Atlanta area" but gives no further description of the residence where the alleged transaction occurred. This is the only allegation of illegal activity at Miller's residence. Other information known to law enforcement around the time and disclosed in discovery indicate that Miller resided at other locations during the investigation that led to the warrant. The affidavit contains nothing about any surveillance of the residence or controlled buys occuring within the residence or any other evidence to suggest that drug trafficking was occurring at the target location. The good faith exception does not apply in this case because the magistrate lacked a substantial basis to believe that Miller was conducting drug

activity out of the target location. United States v. Lyles, 910 F.3d. 787 (4th Cir. 2018).

WHEREFORE, Defendant respectfully requests that this Court find that the statute is unconstitutional, the traffic stop was illegal, and the warrants were not only illegally executed, but were also illegally obtained, as they were not supported by probable cause, were unconstitutionally overbroad, and suppress the improperly obtained statements and evidence against Defendant in this case.

This 30 day of November 2022.

                                              Respectfully submitted,

                                              /S/ Bruce Harvey
                                              LAW OFFICES OF BRUCE S. HARVEY
                                              ATTORNEYS FOR DEFENDANT
                                              Bruce S. Harvey, #335175
                                              bruce@bharveylawfirm.com
                                              Jamie Roberts, #608590
                                              jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing *Preliminary Omnibus Motion To Suppress* on opposing counsel by facsimile transmission, electronic delivery, by hand delivery, or by depositing a copy of the same in the United States Mail with sufficient postage thereon, addressed as follows:

Calvin Artie Leipold, III, AUSA
75 Ted Turner Drive , Suite 600
Atlanta, Georgia 30303

This 22 day of November 2022.

Respectfully submitted,

/S/ Bruce Harvey
LAW OFFICES OF BRUCE S. HARVEY
ATTORNEYS FOR DEFENDANT
Bruce S. Harvey, #335175
bruce@bharveylawfirm.com
Jamie Roberts, #608590
jamie@bharveylawfirm.com

146 Nassau St.NW
Atlanta, GA 30303
(404) 659-4628 office
(404) 681-3953 fax